*B. R. Curtis & G. L. Roberts,* for the defendants.

---

FREDERICK H. ODIORNE *vs.* NEW ENGLAND MUTUAL MARINE INSURANCE COMPANY.

In a policy of insurance on a vessel, the words " prohibited from " specified waters and ports between certain dates constitute a warranty that the vessel shall not enter those waters or ports during that time.

Neither the oral statement of the president of an insurance company, at the time of issuing a policy on a vessel, that the violation of a warranty not to enter certain waters or ports would not avoid the policy; nor a usage, among the underwriters of the port where the insurance is made, to consider such a violation as not avoiding a policy; nor the fact that the company in a previous year insured the same vessel by a policy containing the same warranty, while they knew she was within a prohibited port, and collected the premium therefor at the end of the year; is admissible, in an action on the policy, to control or vary its construction.

CONTRACT by a merchant doing business in Boston, to recover the amount insured on his ship Zero by a policy issued by the defendants, an insurance company established in Boston. The case was submitted to the judgment of the superior court, and, on appeal, of this court, upon agreed facts, of which the following are all that are material.

The policy was issued on March 2, 1867; insured the vessel for one year from February 26, 1867; and contained the follow ing clause : " Prohibited from the River and Gulf of St. Lawrence, Northumberland Straits, or Cape Breton, and Black Sea, between October 1 and May 1."

In March 1867, the vessel used a port in Cape Breton, and afterwards returned to New York in safety. On December 24, 1867, she sailed from St. Johns, Newfoundland, for Sydney, Cape Breton, a prohibited port, and, when, a short distance out from St. Johns, was struck by a gale and blown out into the middle of the Atlantic Ocean, where she was lost by the perils insured against, on January 10, 1868.

If the court should be of opinion that the plaintiff could recover on these facts, the case was to be sent to an assessor to ascertain the amount of loss ; otherwise, judgment was to be entered for the defendants, unless the court should be of opinion that oral testimony on the part of the plaintiff would be admissible to prove " that, when the policy was delivered to the plaintiff's agent, he objected to the clause above given, and stated to the president of the defendants that the vessel would probably want to use some of the prohibited ports, and the president replied that the effect of the clause was to exclude risks in such ports only, but not to vitiate the policy, and in that case he could come in and make an agreement for an additional premium, or take the risk himself while in such ports ; that a custom exists with the underwriters of Boston to construe said clause as excluding any risks in the prohibited ports, but not that such use vitiates the policy ; that for the year previous to February 26, 1867, the plaintiff insured the same vessel with the defendants, by a policy containing the same clause as the one quoted, and, when the insurance was effected, the vessel

was in Sydney, a prohibited port, and it was so stated in the application for insurance, and the defendants issued their policy, and at the end of the year demanded and collected of the plaintiff the premium for such year." If the court should be of opinion that, in event of the inability of the plaintiff to recover on the facts first stated, it would be competent for him to prove any or all of these additional facts, the case was to be sent back for trial; otherwise, judgment was to be for the defendants.

*M. E. Ingalls*, for the plaintiff.

*H. C. Hutchins*, for the defendants.

CHAPMAN, C. J. As a policy of insurance is a written instrument, its language must be regarded as expressing what the parties intended to agree upon, and the court must construe it without being influenced by the oral statements of either party. Therefore, the oral statements of the president of the company as to the construction of the policy in this case, which were offered in evidence by the plaintiff, are inadmissible. The usage which was offered to be proved is also inadmissible. *Seccomb v. Provincial Insurance Co.* 10 Allen, 305. It is merely a usage among underwriters in Boston to construe a clause of the policy in a particular way. The clause in question is: " Prohibited from the River and Gulf of St. Lawrence, Northumberland Straits, or Cape Breton, and Black Sea, between October 1 and May 1." There is nothing in this language so technical or peculiar, or having such application to a particular trade or branch of business, or a particular method of managing business, as to require the evidence of usage to explain it, within the principles stated in *Eaton v. Smith*, 20 Pick. 150, *Macy v. Whaling Insurance Co.* 9 Met. 354, or *Crocker v. People's Insurance Co.* 8 Cush 79. But the proposition is, in effect, to resort to the underwriters in Boston as authority for the legal construction of a contract containing ordinary language.

The evidence offered to prove that, in a prior year, the company insured the same vessel, by a similar policy, while she was in a prohibited port, and that the policy was treated as valid, is also inadmissible. The waiver of the prohibition in that

case does not aid us in the interpretation of the policy before us.

In March 1867 the vessel used a port in Cape Breton, and afterwards returned to New York in safety. On December 24, 1867, she sailed from St. Johns, Newfoundland, for Sydney, Cape Breton, a prohibited port; and, when a short distance out of St. Johns, she was struck by a gale and driven out into the middle of the Atlantic Ocean, where she was lost by the perils insured against, on January 10, 1868. The principal question presented is, whether the word " prohibited " constitutes a warranty that the vessel shall not go to the places designated within the prescribed time.

No particular form of words is necessary to constitute a warranty; and though the assured has signed no writing, but has merely accepted a policy which the insurer has signed and delivered to him, yet its statements as to what he or the vessel shall do, or as to what condition she shall be in, are often regarded as warranties on his part. No case is cited in which the word " prohibited " has been construed by direct adjudication. But words which are equivalent to a prohibition are regarded as amounting to a warranty. Thus, in *Colledge* v. *Harty*, 6 Exch. 205, the clause which was held to be a warranty was a rule, subjoined to the policy, that the vessels insured " were not to sail to or from " certain specified ports at certain specified seasons. In *Sawyer* v. *Coasters' Insurance Co.* 6 Gray, 221 the words " not allowed " to carry grain in bulk, &c., seem to have been so regarded, though the point was not directly decided. See also *Palmer* v. *Warren Insurance Co.* 1 Story, 360. In the present case, the clause above cited amounts to a statement that the vessel insured shall not be allowed by the assured to enter the waters specified within the times prescribed, and such a statement comes within the proper definition of a warranty, and must be regarded as such.

A warranty is held to be a condition precedent; it must be literally fulfilled, and a breach of it makes the policy void. Arnould on Ins. §§ 213–215. In the present case, there can be no doubt that, if the prohibition amounted to a warranty, it was

violated, in March 1867, by the use of a port in Cape Breton. It is not necessary, therefore, to consider the effect of the voyage to Sydney; for the policy had already become void.

*Judgment for the defendants*