WILLIAM M. LOVETT & another, administrators, *vs.* CHINA MUTUAL INSURANCE COMPANY.

Suffolk.    January 20, 1899. — July 3, 1899.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Marine Insurance — Construction of Words of Prohibition — " Ports."*

The true construction of the words in a policy of marine insurance, " Prohibited from the River and Gulf of St. Lawrence, ports in Newfoundland, Northumberland Straits, Cape Breton," etc., is that the waters of Cape Breton and not merely its ports are prohibited.

CONTRACT, upon two policies of insurance, issued by the defendant to William D. Lovett, deceased, upon the ship County of Yarmouth. At the trial in the Superior Court, without a jury, before *Dunbar*, J., there was evidence tending to show that each policy was for one year, one dated October 22, and the other December 30, 1892, and that each contained the clause printed in the opinion.

On September 1, 1893, the ship, in a good seaworthy condition, sailed from London, England, to Sydney, Cape Breton, for orders. On September 29 she sighted the eastern end of Scaterie Island, off the east coast of the island of Cape Breton, and proceeded towards Flat or Low Point, so called, and anchored for orders off that point, at a place marked " A " on an accompanying chart.

On the morning of October 10 a pilot from Flat or Low Point came on board with orders for the ship to proceed to St. John, N. B., to load.    While the ship was getting under way the wind shifted, so that it became necessary for her, under stress of weather, to again come to anchor at a point nearer shore marked " B " on the chart.    The gale increased so that it was not safe for the ship to leave that anchorage ; and it continued to increase, until on the night of October 11 and 12 she went ashore, striking on Petrie Reef, at a point marked " C."

The ship received damages which made it necessary for her to proceed to Sydney to make repairs.    At no time except as stated above did she go into any port or ports in Cape Breton.

The plaintiffs requested the judge to give the following rulings :  " 1. That the words used in the policy meant ports of Cape Breton.    2. That the evidence is clear that the ship County of Yarmouth never used any port or ports of Cape Breton during the term of these policies.    3. That there is no evidence that will warrant a finding that the ship County of Yarmouth ever used waters prohibited by the policies.    4. That there is no evidence that will warrant the finding that the port of Sydney, Cape Breton, extends to any one of the points or places, ' A,' ' B,' and ' C ' on the chart.    5. That on all of the evidence and the agreed facts the plaintiffs are entitled to recover.    6. That within the meaning of these policies the ship County of Yarmouth did not enter the waters of Cape Breton. 7. That the intention of the master of the ship County of Yarmouth is not material.    8. That the Statute of Canada is evidence showing what is the port of Sydney.*    9. That the intention of the insurance company is not material.    10. That if any evidence in relation to the clause is admissible it is only the general understanding of the word in shipping and mercantile circles."

The judge refused to give requests numbered one to six inclusive, and ruled in accordance with requests numbered seven to ten inclusive, and found for the defendant.    The plaintiffs alleged exceptions.

*E. P. Carver*, for the plaintiffs.

*J. D. Bryant*, for the defendant.

---

* This was chapter 30 of the Statutes of the Dominion of Canada of 1879, 42 Vict.    It defined the port as to water space and beach.

LATHROP, J.   The policies in question are time policies for one year, and contain the following clause: " Prohibited from the River and Gulf of St. Lawrence, ports in Newfoundland, Northumberland Straits, Cape Breton and Black Sea, between October 1 and May 1, and from all Guano or Phosphate Islands, except the Peruvian, ports in Greenland, ports in Alaska, the Arctic Ocean, Mexican ports and places in the Gulf of Mexico: from loading (Atlantic United States coastwise voyages excepted), more than one-half registered tonnage of Grain in bulk, except at the ports of Baltimore, Philadelphia, New York, Boston, Portland (Maine), and Montreal from May 1 to September 1."

The principal question in the case is whether the word " ports," in the first part of the sentence, applies to Cape Breton as well as to Newfoundland.   In other words, Is the prohibition applicable to all the waters about Cape Breton, or only to the ports of that island?

It is no longer open to question that this clause is what is called in the law of insurance a warranty, and that the insured must strictly comply with it.   *Odiorne* v. *New England Ins. Co.* 101 Mass. 551.   *Whiton* v. *Albany City Ins. Co.* 109 Mass. 24. *Birrell* v. *Dryer*, 9 App. Cas. 345.

In *Odiorne* v. *New England Ins. Co.* the clause was in this form: " Prohibited from the River and Gulf of St. Lawrence, Northumberland Straits, or Cape Breton, and Black Sea, between October 1 and May 1."

In *Birrell* v. *Dryer*, 9 App. Cas. 345, the clause was " Warranted no St. Lawrence between the 1st of October and the 1st of April."   This was held to include both the River and Gulf of St. Lawrence.

In the case before us, the policy has amended the clause used in the policy in *Odiorne* v. *New England Ins. Co.* by inserting the words " ports in Newfoundland " as among the places prohibited, and has added other prohibited places ; but where " ports " only are prohibited the language is clear and precise: " ports in Greenland, ports in Alaska, the Arctic Ocean, Mexican ports and places in the Gulf of Mexico."   We have not overlooked the fact, somewhat relied on by the plaintiffs, that the clause in relation to loading grain excepts certain ports, naming them. But we do not think that this clause throws any light upon the question before us.

It seems to us that the true construction of the contract is that the waters of Cape Breton, and not merely its ports, are prohibited; and that the vessel was clearly within the waters of Cape Breton, whether she was within the port of Sydney or not. The first six requests for instructions were, therefore, rightly refused, and the rulings and finding of the judge of the Superior Court were right. *Exceptions overruled.*