JOHN S. TUCKER & others *vs.* JOHN H. UTLEY & others.

Suffolk.    March 13, 1897. — May 21, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Action — Surviving Defendant — Commission to take Depositions — Evidence — Contract — Usage.*

If, pending an action against several defendants sued on a joint contract, one of them dies, a ruling that the action may proceed against the survivor is correct.

It is not necessary that the name of the magistrate should be inserted in a commission to take depositions issued under Pub. Sts. c. 169, § 40, if there is a proper designation by official title of the person who may take the deposition.

It is no defence to an action for money had and received by a commission merchant, from the sale of merchandise forwarded to him in the ordinary course of business, that he had some reason to suspect that it belonged to the L. Co., which did business in the former year and sent similar merchandise to him from the same place from which the plaintiff's merchandise was sent; that the ac-

companying drafts were made payable to the same person in whose favor drafts were drawn the year before by the L. Co., and were in the same handwriting; that the mark on the merchandise to designate the consignee indicated a succession to the rights of the L. Co., because, as against the proprietorship truly asserted by the plaintiff's business name in which the merchandise was sent, it had no tendency to contradict the plaintiff's claim of title; that the defendant heard from commercial agencies and from those in the vicinity of the place from which the merchandise was sent that the business was being there carried on in the same manner and by the same parties as in 1889; and that there was a usage for persons whose merchandise of this particular kind did not sell well to change their business name and conceal their identity to mislead the public and avoid the consequences of a bad reputation.

CONTRACT, by John S. Tucker, C. J. Weiser, and Ben Bear, doing business in Lake Benton, in the State of Minnesota, under the name of the North Star Creamery Company, to recover the proceeds of sales of butter forwarded by them to the defendants. Trial in the Superior Court, before *Hammond*, J., who directed a verdict for the plaintiffs; and the surviving defendant alleged exceptions, the nature of which appears in the opinion.

*W. E. Jewell*, for the surviving defendant.

*C. W. Clark*, for the plaintiffs.

KNOWLTON, J.    The ruling that the action might proceed against the surviving defendant was correct. Pub. Sts. c. 165, §§ 12, 13. *New Haven & Northampton Co.* v. *Hayden*, 119 Mass. 361. *Ricker* v. *Gerrish*, 124 Mass. 367. *Colt* v. *Learned*, 133 Mass. 409.

The depositions were rightly admitted. It is not necessary that the name of the magistrate should be inserted in the commission if there is a proper designation by official title of the persons who may take the deposition. The form used in this case was in accordance with the rule of the Superior Court, made under the provisions of Pub. Sts. c. 169, § 40, and was approved in *McKinney* v. *Wilson*, 133 Mass. 131. Presumably the commission was issued under a rule of the Municipal Court or an order of a judge of that court.

The defendants were commission merchants, and were accustomed to receive butter and sell it on commission for the owners. It appears by the auditor's report that they received the plaintiffs' butter, forwarded in the ordinary course of business, and sold it and received the pay for it, and that they have a large balance of money which they have declined to pay over. On

these facts, they are liable in this action for money had and received unless something appears that entitles them to retain the money. Facts were found by the auditor, and evidence was offered to prove other facts, which gave the defendants some reason to suspect that the property belonged to the Lake Benton Creamery Company, which did business in the former year and sent butter to the defendants from the same place from which the plaintiffs' butter was sent, but none of these facts affects the title of the plaintiffs, or their right to have the proceeds of the butter which they sent in their own names in the ordinary way. The fact that the accompanying drafts were made payable to the same persons in whose favor drafts were drawn the year before by the Lake Benton Creamery Company was of no significance, and does not affect the plaintiffs' rights. That they were in the same handwriting merely indicated that they were prepared by some one representing the payees, who were bankers. The mark on the tubs of butter to designate the consignees indicated a succession to the rights of the Lake Benton Creamery Company, but as against the proprietorship, truly asserted by the plaintiffs' business name in which the butter was sent, it had no tendency to contradict the plaintiffs' claim of title. What the defendants heard from commercial agencies was untrue, and it is not competent evidence against the plaintiffs, but is mere hearsay.* All that remains is the offer to prove a usage for persons whose butter did not sell well to change their business name and conceal their identity to mislead the public and avoid the consequences of a bad reputation. If such a usage exists, it cannot be availed of by any one relying upon it to deprive an honest man of his property. It is not a usage with which the plaintiffs had any connection, and it does not recommend itself to the favorable consideration of the court. It does not affect the rights of the plaintiffs in this action. *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52. *Snelling* v. *Hall*, 107 Mass. 134. *Davis* v. *Galloupe*, 111 Mass. 121. *Commonwealth* v. *Cooper*, 130 Mass. 285. *Hedden* v. *Roberts*, 134 Mass. 38.

---

* The bill of exceptions recited that " the defendants made inquiries and received intelligence from the vicinity of Lake Benton and from well known mercantile agencies that the creamery business was being carried on at Lake Benton in the same manner and by the same parties as in 1889."

The defendants received the property as belonging to the North Star Creamery Company, in which name the plaintiffs were doing business. They were bound to account for the proceeds to the North Star Creamery Company. If they suspected that this was merely another name for the Lake Benton Creamery Company, the plaintiffs were not responsible for that suspicion, and the defendants took their chance as to who the parties were, and must account with them according to the fact.

*Exceptions overruled.*