## Cassilay, &c. *vs* C. P. Young & Co.

ERROR TO THE LOUISVILLE CHANCERY COURT.

### Carriers. Insurers.

JUDGE MARSHALL delivered the opinion of the Court.

CHANCERY.

4bm265
e129    171
4bm265
137    532

Case 52.

October 28.

IF the bill of lading, by which the shipment of the complainant's goods on the flat boat No. 2, (Mediator,) for delivery without delay, (perils of the river and unavoidable accidents excepted,) at Vicksburg, had contained expressly the privilege of re-shipping on good steam boats at Paducah or the mouth of the Ohio, instead of naming the mouth of Ohio alone; still as the carriers had undertaken to deliver the goods at Vicksburg without delay, this privilege of re-shipment, even if it had been more extensive and authorized a re-shipment whenever a steam boat could be found ready to complete the undertaking, and able, in the stage of water as it actually ex-

The undertaking to deliver goods, the dangers of the river excepted, with privileges of re-shipment at a particular point, will not authorize a stoppage short of the point designated for re-shipment, and if the carrier stop short of that point & the cargo be lost in a storm he will be responsible.

isted, to do it, would not have given the right of stopping at Paducah to await there the coming up of a boat, when none was there at the time and none shortly expected. And the same conclusion must be adopted if it should be understood to have been the intention of the parties that the goods were to be re-shipped on board the steam boat Mediator, to which the flat boat belonged; and if they were received on board the flat boat No. 2, for the Mediator, and to be put on board of that boat either at Paducah or at the mouth of the Ohio, or wherever else she might be found. As she was neither at Paducah nor expected there immediately, but was, in fact, at the mouth of the Ohio within four or five days after the flat boat arrived at Paducah, 60 miles above, there was no propriety in stopping at the latter place, nor was there any apparent necessity for so doing; nor is any sufficient reason shown why the steam boat Mediator did not proceed to Paducah. We are of opinion, therefore, that the owners of said steam boat, who had undertaken to carry the goods without delay, were guilty of a breach of duty and of contract, in ordering the flat boat to stop at Paducah, and in discharging the hands there, except one to take care of the boat; and that they cannot excuse themselves from liability for the loss incurred while the boat was in this condition at Paducah, on the ground that the boat being fastened to the shore was sunk in a storm. If she had not been there, she might, and probably would have escaped the storm, as to the violence and extent of which there is no evidence; and indeed, as to the fact itself, no mention is made in the protest, nor by any witness but one; and she might and probably would have met the Mediator at the mouth of the river. Or if the hands had not been discharged, the goods might, perhaps, have been saved from material damage; or if the Mediator had come up to Paducah when at the mouth, on the 22d or 23d of November, four or five days after the flat boat reached Paducah, instead of making another trip below, the great delay in delivering the goods at Vicksburg would have been avoided. If the owners of the Mediator preferred the profits of an immediate trip below to the delay of going up to Paducah or of waiting for the

flat boat at the mouth, whereby they might have perform-
ed, or at least shown a disposition to perform their con-
tract with the complainants, they must bear the conse-
quences.

The storm at Paducah was undoubtedly a peril of the
river, or an act of God, for the effects' of which the car-
riers would not have been liable, if they had encountered
it in the ordinary course of the voyage and of their duty.
But as it came upon them when out of the course of the
voyage and of their duty, and might probably have been
avoided, or at least its effects greatly mitigated but for
their disregard of their duty and of their contract, we are
of opinion that they are liable for the loss. We are also
of opinion that this liability, if discharged to any extent,
was discharged *pro tanto,* only, by the payment made by
the Insurance Company, which the complainants suppos-
ed to be liable to them as for a total loss; and that it was
not limited nor conclusively ascertained by the survey and
assessment of damage which the carrier caused to be
made at Vicksburg. As upon refusal of the consignees
to accept the goods, the carriers had them sold at auction,
upon due advertisement, for the benefit of whom it might
concern, the presumption, (which is also sustained by
proof,) is that they sold at their fair value; and therefore,
the actual loss is the difference between their cost to the
complainants and the price which they brought. If the
carriers had intended to stand by the assessment and to
insist that the consignees were bound to take the goods in
their damaged condition, they should have merely lodged
them in safety as the goods of the consignees. By un-
dertaking to sell them, they are bound by the sale, as
evidence of their value, and thus indirectly, of the dam-
age; and having retained the proceeds of the sale, sub-
ject to a final adjustment of liabilities, they should pay
so much of the loss as has not yet been paid.

The money received by the complainants from the in-
surers, on a compromise of their claim for a total loss
and abandonment, being the amount of the damage as-
sessed at Vicksburg, was credited in the decree of the
Chancellor; and although the decree, including that sum,
may be for more than the exact cost of the goods to the

CASSILAY, &c.
*vs*
YOUNG & Co.

But if the carrier had been in the discharge of his duty and under-taking, there would have been no responsibility in such case.

Where the con-signee refused to receive damaged goods of the car-rier and he sell them, he shall account to the consignor or owner for so much as will in-demnify him and not paid by in-surer.

complainants, it is not for more than the amount of that cost with interest. And although it is for less than the cost, with interest, yet as the Chancellor was not bound to give interest, and the decree is for the precise sum demanded, we will not reverse it for the purpose of directing interest to be decreed.

Wherefore, the decree is affirmed on the original and cross errors.

*Duncan* for plaintiffs: *Pirtle* for defendants.

