Cox, Brainard & Co. v. Foscue.

---

## COX, BRAINARD & CO. *vs.* FOSCUE.

[ACTION AGAINST OWNERS OF STEAMBOAT FOR NEGLIGENCE.]

1. *Liability of steamboatmen, as common carriers, in matter of transhipment of freight.*—A transhipment of freight is only justifiable in cases of necessity, and, if made in the absence of such necessity as constitutes a legal excuse, subjects the carrier to liability for the subsequent loss of the freight on the vessel to which it is transferred; and the mere grounding of a steamboat on an inland river, from which she could relieve herself, with safety and convenience, by temporarily placing a

part of her cargo on the bank, and afterwards take it on board again and finish her voyage, does not constitute such legal excuse.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

THIS action was brought by F. F. Foscue, against the appellants, as common carriers, to recover damages for the loss of two bales of cotton, which were shipped by the plaintiff on board the defendants' steamboat *Eliza Battle*, consigned to Goode & Ulrick at Mobile, and which were never delivered. The case was before this court at its January term, 1859, when the judgment of the city court was reversed, and the cause remanded.—See the report in 33d Ala. 713. On the second trial, as appears from the record, the defendants pleaded the general issue, and a special plea averring, in substance, that the cotton was lost by "the dangers of the river and of fire," within the meaning of the exception contained in the bill of lading; and issue was joined on each of these pleas. It appeared from the evidence adduced on the trial, that the plaintiff's cotton was shipped on board of the defendants' boat, *Eliza Battle*, at *Pace's* landing on the Tombeckbe river, on the 20th November, 1855; that the bill of lading contained the usual exception as to "dangers of the river and fire;" that the *Eliza Battle*, while on her voyage down the river, ran aground on *Croom's* bar, and, in order to lighten her, a part of her cargo, including the plaintiff's cotton, was transferred to the *Jenny Bealle*, another boat belonging to the defendants, which passed while the *Eliza Battle* was on the bar; that the *Eliza Battle*, after being thus lightened, continued her voyage down the river, without taking back any part of her cargo from the *Jenny Bealle*; that the latter boat afterwards ran aground, and was lightened, in like manner, by transferring a part of her cargo to the *Sallie Spann*, another boat belonging to the defendants; and that the *Sallie Spann*, with all her cargo, including the plaintiff's cotton, was afterwards destroyed by accidental fire. Each one of the boats was shown to have had skill

Cox, Brainard & Co v. Foscue.

ful and competent officers and a sufficient crew, and not to have been overloaded; and no question of negligence arose in the case. One of the plaintiff's witnesses, who was a passenger on the *Eliza Battle*, testified as follows : " The river was low, and falling slowly. I saw no danger to the boat as she lay on the bar, and heard nothing said by her officers as to any danger, except danger of delay, or of inability to continue her voyage. The boat was so near the bank at one end, that she could have put out her gangways, and rolled off her cotton on the bank. I do not know what constitutes a necessity to tranship, nor do I know whether the boat could have gotten off; but the cotton could have been landed on the bank, by putting out planks from the boat."

"The court charged the jury as follows : 'If the *Eliza Battle* was compelled to tranship the cotton, by or through the negligence or want of skill of those who had the management and control of her, the defendants are liable. But, if there was no negligence, or want of skill, on the part of those who had the management and control of the *Battle*, then you will ascertain, whether or not she was in such a condition that, in order to avoid an impending serious danger or loss to the boat and cargo, it was necessary to tranship the cargo, or a part of it, and there was no other reasonable way of lightening her in the power of the captain with his crew, by which said lightening could have been effected, at less risk to the plaintiff than was occasioned by such transhipment. In case of grounding, if the grounding was by reason of any negligence of the defendants, they would be responsible for all the consequences of the transhipment and loss, if accruing by reason of the transhipment. If the grounding was not by negligence, then, if it became necessary to lighten the boat in order to get her off, their first duty would be to land the cotton, if that would have enabled the boat to proceed, and it was practicable to do so with safety, and take it on again after the boat was freed from the grounding, and in a proper condition to proceed on her voyage. If this could not be

conveniently done, then it was proper to put the cotton on another boat, in order to lighten the Battle, if the captain, acting with the judgment that a wise and prudent man would exercise as the most conducive to the benefit of all concerned, came to the conclusion that such transhipment should be made... If you are satisfied that there was such a state of facts, and the transhipment was proper, the defendants are entitled to a verdict ; if it was not, the plaintiff is entitled to a verdict.' "

The court also charged the jury, at the request of the plaintiff, "that the right of transhipment at the plaintiff's risk did not exist, unless it was necessary to avoid an impending serious damage or loss to the boat and cargo, and there was no other reasonable way of lightening the boat in the power of the captain with his crew, by which such lightening could have been effected, at less risk to the plaintiff than was occasioned to him by such transhipment."

The defendants excepted to each of these charges, and they now assign them as error...

GEO. N. STEWART, and E. S. DARGAN, for appellants. The court below, in its instructions to the jury, sanctioned the transhipment only as a last resort—required the captain first to exhaust every other possible mode of lightening the boat ; and made it his first duty to land the cotton on the bank and take it back again, if that could be done at less risk to the plaintiff than was incurred by the transhipment. In each of these particulars, it is insisted, the instructions are erroneous. It is the first duty of a carrier, to forward the goods entrusted to him to their place of destination, if his own vessel becomes disabled. The master of the vessel is the agent and representative, not of the plaintiff or defendant alone, but of all the parties interested in the ship and cargo—owners, shippers, and underwriters ; and it is his duty to consult the interests of all equally. If he, exercising his best judgment and professional skill, and acting for the best interests of all parties

·concerned, determined that the accident rendered the transhipment necessary or proper, he was authorized to make it, and the defendants thereby incurred no liability for the subsequent loss of goods.—Parsons' Mar. Law, 162–3, and notes ; Abbott on Shipping, .448, :453–4, 240, 236, 249, note 1 ; Flanders on Shipping, 257–8, 240, 254, 171, 173 ; 3 Kent's Com. (5th ed.) 210, 212, 224.; 1 Story's R. 342 ; 4 Johns. Ch. 218 ; 9 Mass. 551.; ·9 Ad. & ·El. 332 ; Parsons' Mercantile Law, 348–9.

Wm. Boyles, and R. H. & J. L. Smith; *contra.*—A transhipment of freight is only justifiable in cases of necessity. The mere stranding or grounding of ·the vessel does not ·constitute a ·case·of·necessity, if she can be got off and repaired· at an expense not exceeding one-half her value. Abbott on Shipping, 451.; *Bryant ·v.·Com. Ins. Company,* 6 Pick. 141 ; 3 Story, 465 ; 10 Barr, ·114.; 1 Arnould on Ins. 181 ; Flanders on Maritime Law, §§ 135, 137 ; Am. Law Reg. for June, 1857, p. 459; 8 Watts & S. 44; 1 B. Monroe, 339.; 6 Ohio, 359 ; 8 Missouri, 99 ; 9 Ad. & .El. 314.

A. J. WALKER, C. J.—The contract of affreightment ·obliges the carrier, in the absence of a legal excuse, to carry the freight to the destined port in the very vessel stipulated in the bill of lading.   It is a right resulting from the contract, that the transportation shall be in the ·chosen vessel.   It is not permissible to speculate as to the reasonableness of the choice.   The owner of the freight cannot be questioned as to his reasons.   The law allows to him the benefit of the maxim, *"Hoc volo, sic jubeo, sit pro ratione voluntas."*—*Bazin v. Liverpool & Am. Steamship Co.,* Am. Law Register for June, 1857, p. 459, opinion by Judge Grier ; *Garnett v. Willan & Jones,* 5 Barn. & Ald. 53–61.; *Little & Tompkins v. Semple,* 8 Mo. 99.  ·A transhipment of the freight, without a legal excuse, however competent and safe the vessel into which the transfer is made, is a violation of the contract, an infringement of the rights of the

freighter, and subjects the carrier to liability if the freight be lost. The transhipment, therefore, of the plaintiff's cotton, of itself rendered the carrier liable for the subsequent loss, of the cotton, unless the act of transhipment was legally proper or excusable.

The first charge given by the court announced the proposition, that the transhipment was not rendered proper by the grounding of the boat, if, by placing the cotton on board upon the bank, the boat would have been freed from the grounding, and could afterwards have taken on the cotton, and proceeded on her voyage, and these things could have been done with safety and convenience. The precise question to which this charge gives rise is, whether a grounded steamboat, upon one of our interior rivers, is justified in transhipping a part of her cargo, when she could with safety and convenience relieve herself by placing it upon the bank, and then take it on and prosecute her voyage to the port of destination. The rule of maritime law is not, that the master of a vessel may at his election, or even when he deems it most politic, tranship. The privilege of transhipment is one of necessity. Judge Story says, the master "is not at liberty to transport the goods in any other vessel in the course of the voyage, *except from mere necessity*, when his own ship becomes incapable, by inevitable casualty, from performing it."—Story on Bailments, 564, § 562. Chancellor Kent states the same principle in the following language : "In cases of necessity, as where the ship is wrecked, or otherwise disabled in the course of the voyage, and cannot be repaired, or cannot, under the circumstances, be repaired without too great delay and expense, the master may procure any other competent vessel to carry on the cargo, and save his freight." Kent's Com. m. p. 210. And Angell, in his work on Carriers, in reference to the same subject, says, that if by reason of stranding, or some other unexpected cause, *it becomes impossible to convey the cargo safely to its destination in his own vessel*, the master is to do what a prudent man would think most for the benefit of all concerned; and

transhipment to the place of destination is the first object, because that is the furtherance of the original object. Angell on the Law of Carriers, 188, § 187. See, also, Smith's Mercantile Law, 292 ; 1 Parsons' Mar. Law, 163, 161, n. 2 ; Abbott on Shipping. m. p. 365 ; Searle v. Scovel, 4 Johns. Ch. R. 222 ; Shipton v. Thornton, 9 Ad. & El. 333 ; Crawford v. Williams, 1 Sneed, 212 ; 1 Arnould on Ins. 181, top ; Jordan v. Warren Ins. Co., 1 Story, 354 ; Parsons' Mer. Law, 348–9.

It may be that the necessity, which would justify a transhipment, is not required to be shown with absolute certainty to have existed. That a *moral necessity* would be sufficient to justify the transhipment, seems to be conceded by the authorities. Such a case of moral necessity would exist, where the circumstances were such that a master of reasonable prudence and discretion, acting upon the pressure of the occasion, would have made the transhipment, from a firm opinion that, unless the transhipment was made, the vessel could not be delivered from the peril at all, or not without the hazard of an expense utterly disproportionate to her real value.—*Brig Sarah Ann*, 2 Sumner, 207 ; *Gordon v. Mass. Ma. & Fire Ins. Co.*, 2 Pick. 240 ; *Ship Fortitude*, 2 Sum. 248 ; Flanders on Maritime Law, 104, n. 2 ; 1 Parsons on Maritime Law, 60 ; Parsons' Mer. Law, 376, n. 3. A case of such moral necessity is put by Lord Tenterden, as follows : "If on the high seas the ship be in imminent danger of sinking, and another ship, apparently of sufficient ability, be passing by, the master may remove the cargo into such ship ; and although his own ship happen to outlive the storm, and the other perish with the cargo, he will not be answerable for the loss."—Abbott on Shipping, m. p. 365. But no such case of moral necessity is presented in the facts upon which the court below, in the charge which we are considering, instructed the jury, that the transhipment of the plaintiff's cotton was not justified.

In the case of *Bryant v. Com. Ins. Co.*, (6 Pick. 141,) the court sustain the view which we take of the master's duty

in this case, in the following language ; "The law authorizes the master, in case of shipwreck, stranding, or other disasters, which may happen without his fault, to act for all parties interested in their absence. If the ship should be stranded, it would be his duty, in behalf of the owner of the ship, to get her off and prosecute the voyage, if it could be done at an expense not exceeding half her value. *So, if that could not be done*, he has authority to procure another ship to carry the cargo to the port of destination. If the cargo were damaged by the stranding, not exceeding one-half of the invoice value, it would be the duty of the master, as representing the owner of it, to cause it to be reladen on board of the ship, if that were in a condition to transport it, or, if not, on board any other ship which he could procure upon reasonable terms on account of the ship-owner ; to the end that the ship-owner may earn his freight, and the merchant may have his goods at the port of destination. The master, in short, is, in such cases, to act reasonably and honestly, with a view to save the property and perform the voyage." The mere stranding, of itself, does not necessarily produce a necessity for transhipment. Notwithstanding the stranding, it is the master's duty to get the vessel off, and prosecute the voyage, if he can do so ; and no consideration of mere convenience to him would justify a transhipment.

We do not think the charge given at the instance of the appellee is obnoxious to the objection made especially to it. The objection is, that it makes the transhipment improper, unless there was no other *reasonable* way of lightening the boat in the power of the captain, at less risk to the plaintiff than was occasioned by the transhipment ; and that the jury were thus made to consider the interest of the plaintiff alone, and not of the boat-owner and all others concerned, in determining whether the transhipment was proper. We do not think the charge is obnoxious to the objection. A way of lightening the boat, which would protect the plaintiff at the expense of all others concerned, would be unreasonable ; and the use of the word *reasonable* in the

charge shows, that the court did not intend to make the impropriety of the transhipment depend upon the fact, that there was another way of lightening the boat, which would produce less risk to the plaintiff, but which would involve a disregard of the interest of all others concerned. If the charge is confused, and tended to mislead the jury, the appellants ought to have protected themselves by asking an explanation at the time. What we have already said in passing upon the first charge, will meet the other objections made to the second.

Judgment affirmed.

STONE, J., does not assent to the correctness of the criticism of the last charge given.