HOWARD SNELLING *vs.* FRANKLIN A. HALL & others.

In an action for breach of a written contract made in Boston by the defendants, who were coal commission merchants there and in Philadelphia, with the plaintiff, who was a coal dealer in Boston, to sell him a large quantity of coal, to be delivered free on board vessels at Port Richmond in Philadelphia, at a fixed price, and to be shipped at the plaintiff's option between the date of the contract and September 1, it appeared that on August 24 the plaintiff wrote to the defendants that he was ready to have the whole amount of coal delivered, but gave no direction where to ship it to, and it also appeared that colliers were continually plying between Port Richmond and Boston. *Held*, that the plaintiff's option was well exercised by his letter of August 24; that the defendants were bound to furnish the vessels, and ship the coal thereon for Boston, although it was impossible to ship it before September 1; and that evidence of a usage at Port Richmond, to interpret similar contracts as requiring the option to be given in such season as to allow the coal to be shipped between the dates named in the contract, was inadmissible.

CONTRACT by the plaintiff, doing business under the name of Howard Snelling & Company, against the defendants, doing business under the name of Hall, Caldwell & Company, for breach of an agreement of two parts, of which the first, signed by the plaintiff, was as follows: "Boston, June 11, 1868. Bought of Hall, Caldwell & Company two thousand tons Freek's Centralia broken coal, to be delivered free on board vessels at Port Richmond, Philadelphia, at three dollars and thirty-five cents per ton. Subject to changes of tolls on Reading Railroad. Hall,

Caldwell & Company guarantee that the advances shall not exceed twenty-five cents a ton. To be shipped at our option between this date and September 1, 1868 ; " and the second of which, signed by the defendants, was as follows : " Boston June 11, 1868. Sold to Howard Snelling & Company, two thousand tons Freek's Centralia broken coal, to be delivered free on board vessels at Port Richmond, Philadelphia, at three dollars and thirty-five cents per ton. Subject to changes of tolls on Reading Railroad. Hall, Caldwell & Company guarantee that the advances shall not exceed twenty-five cents a ton. To be shipped at Howard Snelling & Company's option, between this date and September 1, 1868."

At the trial in the superior court, before *Rockwell*, J., it appeared that the plaintiff was, and for some years had been, engaged in the coal business in Boston ; that the defendants were coal commission merchants, doing business in Boston, New York and Philadelphia ; and that the mine of Freek's Centralia coal was situated on the Reading Railroad, a long way from Port Richmond, which was the terminus of the railroad and the place for shipment of coal on board vessels in the river at Philadelphia.

The plaintiff introduced evidence that on August 24, 1868, he had some conversation with John Hall, the defendants' clerk, about the shipment of the coal, and immediately afterwards, on the same day, wrote a letter to the defendants, of which the following is all but the formal parts : " In conversation with Mr. John Hall, this morning, the writer was led to suppose that you desired of us written instructions as to the shipment of the 2000 ons Centralia broken coal purchased of you June 11. We are ready to have the whole amount delivered at any time, and have been for six weeks or more, as we have told you verbally." There was evidence that it would have been impossible to have shipped the coal between the delivery of the letter to the defendants and September 1, 1868, and that the shipment would reasonably have required the time from the delivery of the letter up to the 12th or 15th of September 1868. And it appeared that the plaintiff never had vessels ready at Port Richmond to receive any of the coal ; that he never gave the defendants any directions where to

ship the coal, or any other instructions or directions in regard to the shipment, except what was contained in his letter of August 24; and that the letter was the only expression of the option relied upon by him at the trial.

The defendants offered evidence tending to show " that it has always been the uniform interpretation, usage and custom of the coal trade over the Reading Railroad, and at Port Richmond, that, under contracts similar to this, the option must be given, and the coal all shipped, within the time named in the contract;" but the judge excluded this evidence.

The defendants also offered evidence tending to show that there was no tender of any vessel or vessels by the plaintiff to them to bring the coal. The plaintiff objected, upon the ground that the contract did not require the plaintiff to tender vessels, and that in the course of the coasting trade vessels were always to be found, with no great delay, at Port Richmond, seeking for freights, and ready there to meet the wants of the defendants in fulfilment of their contract. The defendants contended that the contract did not oblige them to put the coal on board vessels bound to any particular place; and that the option could not be effectually expressed, except by tendering vessels, or designating the destination of the vessels to be loaded. The judge ruled, " that, as it had appeared in evidence, among other things, that the plaintiff was a coal dealer in Boston, that the defendants had a house in Boston, with which this contract was made, as well as one in Philadelphia, where it was to be executed, and that coasting vessels were continually plying between Port Richmond and Boston, the obligation of the defendants, after the expression of the option, was to deliver the coal, within a reasonable time, on board vessels ready and willing to proceed with their cargoes to Boston, if such vessels were at Port Richmond."

The defendants requested the judge to instruct the jury " that the true construction of the contract obliged the plaintiff to receive the coal on board vessels at Port Richmond between the date of the contract and September 1, 1868, to have vessels there ready so to receive it, and to notify the defendants thereof in such season that, acting as men diligent and skilled in the busi-

ness, and using all reasonable means, they could have made the delivery on board of such vessels before September 1, 1868; that if the plaintiff failed to perform his part of the contract in not having vessels ready at Port Richmond to receive the coal, or in not notifying the defendants thereof before September 1, 1868, the defendants would thereby be excused from shipping the coal at all;" "that, at all events, the defendants would not be bound to furnish vessels at Port Richmond to receive the coal, in the absence of directions from the plaintiff to them, on what terms and for what destination to furnish them, and on what terms and to what place the charter should be made; that it was the intention of the parties, as gathered from the language of the contract, that the plaintiff should so far perform his part of the contract, that the defendants, using all reasonable exertions and diligence, could perform their part of the contract between its date and September 1, 1868; that, if the plaintiff failed to do so, he could not maintain this action; and that the guaranty as to advance in tolls did not cover a period beyond August 31, 1868." But the judge refused so to rule, and instructed the jury "that if they were satisfied that on August 24 the plaintiff's option was made and expressed to the defendants, and such was the intention of the letter of that date, that letter was a sufficient expression of the option in form; that, upon its receipt, the obligation was placed upon the defendants to deliver the two thousand tons on vessels at Port Richmond within a reasonable time after August 24; that this obligation did not depend upon the fact whether or not the time between August 24 and September 1 was a reasonable time for said delivery, but would continue beyond September 1 if the intermediate time was not a reasonable time; that, under the terms of the contract, the plaintiff was bound to express his option before September 1, 1868, but not in such a time before that date that the coal could be shipped before that date; that he might give his option at any time between the dates mentioned in the contract; that he was not bound to tender or furnish any vessels to receive the coal; that it was the duty of the defendants, under the contract, after the expression of the plaintiff's option in his letter of August 24, to furnish the vessels at Port Richmond, charter them, and de-

liver the coal thereon; and that, in the absence of any directions from the plaintiff as to where the coal should be shipped, as it was well known to them that the plaintiff lived and did business in Boston, and the defendants had a house in Boston, they were bound, under the contract, to ship the coal for that destination."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*D. S. Richardson & F. W. Kittredge,* for the defendants.

*T. H. Sweetser & L. M. Child,* for the plaintiff.

AMES, J. It appears to us that the defendants were bound, by their contract, not merely to sell the coal to the plaintiff at the agreed price and to transport it to Port Richmond at their own expense, but also to deposit it on board a vessel or vessels, in order to be thence conveyed at the plaintiff's risk and expense to Boston. It was an executory contract, looking to a future time for the delivery of the goods bought and the payment of the agreed price, and that future time was to be determined by the plaintiff at any point of time between the date of the contract and the first day of the following September. Under such a contract, the defendants were under no obligation to deliver till the plaintiff had notified them that he was ready to receive; and when they were so notified, it became their duty to deliver the coal on board ship at Port Richmond. To do this, they of course would be allowed a reasonable time; and the case finds that this operation would require a period of about three weeks. We think also that the contract imports that they were to ship the coal to the plaintiff; and that the true meaning of that stipulation is, that they were to find a vessel for that purpose, to deposit the coal on board of her, and to notify him of their doings by forwarding the customary bills of lading, or such other information as might be necessary or reasonable. The case finds that in regular course of business vessels were continually plying between Port Richmond and Boston; and we must infer that the transportation of coal was an established and regular part of the business of such vessels. It would under the circumstances be as unreasonable to require that the plaintiff should have a vessel waiting to receive his coal whenever the defendants should be ready to deliver it at the port of delivery, as it would be to re-

quire that the defendants should have the coal waiting and stored at that port until such time as the plaintiff should be ready to receive it on board a vessel. There is nothing in the contract that implies that the plaintiff was to select or designate a vessel, or that he had any right in that matter, except that the coal should be sent to him at his own expense and risk, by sea, according to the usual course of business, that is to say, by one or more of the numerous coasting vessels that were continually plying between Port Richmond and Boston. The defendants, by sending it in that manner, would have fulfilled their contract. The instructions of the presiding judge upon this point must therefore be considered appropriate and correct.

The option allowed as to the time of shipment was evidently intended for the benefit of the plaintiff, with some expectation perhaps, on his part, of taking advantage of the lowest rates and the most favorable time of shipment during the interval allowed. There is no stipulation as to the length of notice he should give the defendants of his decision, nor does it appear that he knew how much time they would require, after such notice, to complete the delivery. The option, to be beneficial to the plaintiff, required a precise and definite limitation of time. The length of time which the defendants would need, after notice of his decision, in order to complete the shipment, was wholly indefinite, and might depend on contingencies as to which it could hardly be expected that he would be well informed. It appears to us that the contract allowed him to express his option at any time not later than September 1 ; that it was sufficiently expressed by his letter of August 24; and that the fact that the defendants could not complete the delivery till after September 1 was immaterial.

The evidence offered by the defendants as to a local usage of the coal trade was properly rejected. It was an attempt, not to show a peculiar mode of doing business, but a local rule of law in the interpretation of written contracts, giving to them a meaning different from the obvious purport of the terms in which they are expressed. This, according to the rule laid down in *Dickinson* v. *Gay*, 7 Allen, 29, the law does not allow.

*Exceptions overruled.*