NATHANIEL F. BENSON *vs.* CHARLES A. GRAY.

Bristol.    November 1, 1890. — September 18, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Railroad — Contract of Transportation — Unloading Live Stock — Usage.*

A railroad company, under its contract to transport and deliver certain horses and to store them if not called for, which stipulates that it will not be liable as a common carrier after their arrival at the "place of destination and unlading," that "live animals will only be taken at the owner's risk" during "transportation, loading, and unloading, unless specially agreed to the contrary," and that freight "must be taken away within twenty-four hours after being unladen from the cars," is bound to unload the horses, though at the owner's risk, irrespective of a local usage or general regulation of the company requiring consignees to unload live stock.

REPLEVIN of two horses. The case was submitted to the Superior Court, and, after "judgment for the defendant and order of return," to this court, on appeal, on agreed facts, in substance as follows.

The plaintiff was the owner of the horses in question; and they were taken by one Tisdale, his agent, to the freight station of the Old Colony Railroad Company in Boston, and were loaded by him in a car for shipment to the plaintiff, at New Bedford. The railroad company received them for that purpose, and gave a receipt for the horses to Tisdale. This receipt, which was signed on behalf of the railroad company, and was headed "Live Stock Receipt," was dated October 23, 1889, and under the sub-head "Marks and Numbers" bore the plaintiff's name and address, "N. F. Benson, New Bedford, Mass.," and contained the following: "Received from W. Tisdale, in apparent good order, two (2) horses. Number and mark as above, which the company promises to forward by its railroad, and deliver to      or order, at its depot in          , he or they first paying freight for the same, at the rate customary per ton of 2,000 pounds. N. B. If merchandise be not called for on its arrival, it will be stored at the risk and expense of the owner. . . . The following rules and regulations have been adopted by the several railroad corporations in regard to freight. . . . The company will not hold themselves liable at all for any injury to any articles of freight, during the course of transportation, arising from the weather or accidental delays. . . . Nor will they [the company] hold themselves liable as common carriers for such articles, after their arrival at their place of destination and unlading in the company's warehouses or depots. Machinery, furniture, stoves and castings, mineral acids, all liquids put up in glass or earthen-ware, unpacked fruit, and live animals, will only be taken at the owner's risk of fracture or injury during the course of transportation, loading, and unloading, unless specially agreed to the contrary. . . . All articles of freight arriving at their place of destination must be taken away within twenty-four hours after being unladen from the cars, — the company reserving the right of charging storage on the same, or placing the same in store at the risk and expense of the owner, if they see fit, after the lapse of that time."

On October 24, 1889, the plaintiff went to the freight station of the railroad company in New Bedford, and paid the company's agent its freight charges on the horses, and received from the agent a receipt containing rules and ,regulations similar to those above set forth. The plaintiff then asked the agent to unload the horses for him from the car in which they were transported, but the agent declined to do so, and told the plaintiff that the company would not unload the same. The plaintiff thereupon refused to unload the horses, and demanded that the company should, under its contract and receipt, unload them, and upon the agent's refusal to do so came away. One of the rules and regulations of the railroad company was that live stock should be loaded and unloaded by the shipper and consignee, which rule and regulation was not otherwise known to the plaintiff at the time of shipping the horses and demanding the same of the company, except that he knew that the company's agent at New Bedford had been accustomed to require consignees to unload their horses from the cars. After the horses had been confined in the car for twenty-four hours, the defendant, at the request of the company's agent, unloaded them from the car, and took proper care of them while in his possession. After the plaintiff heard that the horses were in the defendant's possession at his stable, he notified him that he owned the horses, and to deliver them up forthwith. The defendant declined to deliver the horses, claiming to act under the instructions of the railroad company, until his charges for unloading and keeping the same were paid. The plaintiff refused to pay such charges, and demanded the horses, and, upon the defendant's refusal to deliver them, replevied the same.

The case was argued at the bar in November, 1890, and afterwards was submitted on the briefs to all the judges.

*L. Le B. Holmes,* for the plaintiff.

*W. H. Cobb,* for the defendant.

ALLEN, J. The transportation of the plaintiff's horses was under. an express contract. This contract was prepared by the railroad company, and called " Live Stock Receipt." In it the company acknowledged the receipt of the two horses marked for the plaintiff at New Bedford, Mass., " which the company promises to forward by its railroad, and deliver to       or order, at its

depot in        , he or they first paying freight for the same. . . . N. B. If merchandise be not called for on its arrival, it will be stored at the risk and expense of the owner." Then followed the rates for transporting different kinds of animals; after which were certain rules and regulations in regard to freight. Among these rules were the following: " Nor will they [the company] hold themselves liable as common carriers for such articles after their arrival at their place of destination and unlading in the company's warehouses or depots. Machinery . . . and live animals will only be taken at the owner's risk of fracture or injury during the course of transportation, loading, and unloading, unless specially agreed to the contrary. . . . All articles of freight arriving at their place of destination must be taken away within twenty-four hours after being unladen from the cars." The plaintiff paid for the transportation of the horses on their arrival at New Bedford, and took a receipt, which contained the same rules and regulations copied above, and applied for his horses; and the agent of the railroad company refused to unload the horses, and required the plaintiff to unload them.

In the opinion of a majority of the court, the railroad company must be held under this contract to have undertaken to unload the horses, though at the owner's risk. This contract was made out with express reference to the carriage of live animals. The railroad company promised to deliver them, and this implies unloading them. The company would also store them, unless called for, and this also implies unloading them. There are three several stipulations as to unloading goods, one of which in express terms includes live animals, and each of which implies that the company will unload them. It must, therefore, be held that the company undertook to unload them.

This being so, a usage of the company's agent at New Bedford to require the owner or consignee to unload live animals is of no consequence. The usage cannot override the contract. *Dickinson* v. *Gay,* 7 Allen, 29. *Seccomb* v. *Provincial Ins. Co.* 10 Allen, 305, 310. *Dodd* v. *Farlow,* 11 Allen, 426, 429. *Boardman* v. *Spooner,* 13 Allen, 353, 359. *Odiorne* v. *New England Ins. Co.* 101 Mass. 551. *Snelling* v. *Hall,* 107 Mass. 134. *Haskins* v. *Warren,* 115 Mass. 514, 535, 536. *Hedden* v. *Roberts,* 134 Mass. 38. *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398. *Collender* v. *Dinsmore,*

55 N. Y. 200.   A rule and regulation of the company can have no greater effect.   The company's rule requiring consignees to unload live stock was not otherwise known to the plaintiff than this; he knew that the company's agent at New Bedford had been accustomed to require consignees to unload their horses. But if well known, it must still give way to the contract.   It was a matter of contract between the plaintiff and the railroad company that the company should unload the plaintiff's horses. This being so, neither a usage nor a rule to the contrary will avail to excuse the company from the performance of its undertaking.   In this respect, the case differs from *Miller* v. *Mansfield*, 112 Mass. 260, and other cases, where there was no such contract.                                     *Judgment for the plaintiff.*