Louisville-Cincinnati Packet Company v. Rogers.

[No. 2,361. Filed March 18, 1898. Rehearing denied July 1, 1898.]

SHIPPING.—*Carriers.—Bill of Lading.—Customs and Usages.—Contracts.—*Evidence of the custom and usage of trade is admissible in mercantile contracts for the purpose of showing the particular sense in which certain words used are intended, but such evidence cannot control or vary the positive stipulations in a bill of lading. *pp. 598, 599.*

SAME.—*Carriers.— Contracts.— Deviation.—* Where a consignor of goods contracted with the carrier to ship same on a certain named boat, and the carrier shipped the goods on another and different boat for the reason that the boat named was not then in port, such deviation constituted a violation of the contract, and the carrier cannot avail himself of a provision of the contract exempting him from liability for the loss of the goods by fire. *pp. 598-602.*

SAME.—*Bill of Lading.—Deviation.—Loss of Goods.—*An averment in an answer to a complaint against a carrier for the value of certain goods destroyed by fire while being shipped in another and different boat from that specified in the bill of lading, that the goods would have been destroyed if left in the wharf-boat to await the arrival in port of the boat to which the goods were consigned, as

that part of the wharf-boat in which the goods would have been stored was also destroyed by fire, is a conclusion.  *p. 602.*

SHIPPING.—*Delivery of Goods.—Rescission of Contract.—Pleading.*— The delivery of goods by the consignor thereof at the wharf-boat of a packet line to a clerk of another and different boat from that named in the bill of lading would not constitute a rescission of a clause of the contract providing for shipment in a certain boat, where it was not shown that the clerk who received the goods was not the agent of the packet company to receive goods for the boat named in the bill of lading.  *p. 603.*

SAME.—*Delivery of Goods.—Waiver of Condition in Bill of Lading.* — The delivery of goods by consignor's agent to a boat belonging to a packet company other than that named in the bill of lading would not of itself constitute a waiver of the condition in the bill of lading that the goods were to be shipped by a certain boat therein named. *pp. 603, 604.*

From the Jefferson Circuit Court.  *Affirmed.*

*Smith & Korbly* and *W. O. Ford,* for appellant.

*Simeon E. Leland,* for appellee.

COMSTOCK, J.—This was an action by appellee, plaintiff below, against the appellant, upon a bill of lading, to recover the price of goods destroyed whilst in the hands of appellant as a common carrier.  The complaint was in two paragraphs.  The first paragraph, in substance, alleged that plaintiff's consignor delivered 1200 pounds of white lead to defendant at Cincinnati, to be carried to Madison; that a bill of lading was issued therefor; and that defendant failed and refused to deliver the white lead.  The second paragraph, in substance, alleged delivery of the white lead to defendant at Cincinnati, by plaintiff's consignor; the issuance of a bill of lading therefor, which was conditioned for carriage to Madison on the steamboat Sherley, and excepted liability for loss from fire; but that the white lead was transferred to the steamboat Carrollton, whereby it was destroyed by the burning of that boat.

The defendant answered in four paragraphs.  The

first paragraph, a general denial, was withdrawn. The second paragraph of answer, in substance, alleged that on the day the loss complained of happened, and for a long time prior thereto, the defendant was, and had been, a corporation owning and operating a line of steamboats from the city of Cincinnati, Ohio, to the city of Madison, Indiana; that among the boats so owned and operated by said defendant on said day were the steamboats Sherley and Carrollton, and said boats were on said day engaged in the packet trade between said cities of Cincinnati and Madison, and leaving said city of Cincinnati for said city of Madison on alternate days, Sundays excepted; that on said day and for more than fifty years prior thereto, defendant and its predecessors kept and maintained a wharf-boat at Cincinnati; that it was the usage and custom of said defendant and its predecessors, during all that time, to receive and hold freight at said wharf-boat, not for any particular boat, but for the first boat to leave port for the destination of the freight received; that on said day when the white lead was delivered to defendant for carriage, together with a bill of lading for the steamboat Sherley, said steamboat was not in port, but was down the river on a trip; but that the steamboat Carrollton was in the port of Cincinnati on said day, taking freight for Madison, for which place it was to clear at 5 o'clock that day. That in accordance with said usage and custom, which was particularly well known to the shippers of Cincinnati, said white lead was placed on board the steamer Carrollton. That said boat, together with all its contents, were destroyed by fire whilst moored at the Cincinnati wharf-boat, without fault or negligence of defendant. The said second paragraph of answer contained also the following allegation, to wit: "And defendant further alleges that, if defendant had held

said goods over from the 5th day of August, 1895, until the next following trip of the steamer Sherley, on the —— day of August, 1895, the said goods would have been destroyed by the accidental fire which destroyed the steamer Carrollton, because the said accidental fire also, at the same time, consumed and destroyed the end of the wharf-boat upon which said goods would have been stored, together with its contents." The third paragraph of answer, in part, alleged that: The plaintiff, by his agent, delivered the goods at defendant's wharf-boat, to Brashear, clerk of the steamer Carrollton, with a bill of lading for said goods, in which bill of lading was inserted "Steamer Sherley, Aug. 5, 1895." That said plaintiff's agent, who delivered said goods at said wharf-boat to said Brashear, well knew that he was the clerk of the steamer Carrollton, and well knew that the 5th day of August was her day in port, and that she was then moored at said wharf-boat, loading for Madison and way-landings, and leaving said port at 5 p. m. of said day, and that she was the only packet in said line leaving said port on that day for Madison. The fourth paragraph of answer alleged, in substance, that plaintiff's consignor delivered said goods to the steamer Carrollton with a bill of lading for the same, in which bill of lading was inserted, "Steamer Sherley, August 5, 1895." Demurrers to the second, third and fourth paragraphs of answer were sustained, whereupon defendant withdrew the plea of general denial, and judgment was given for plaintiff. Defendant properly reserved exceptions.

The rulings of the lower court, sustaining the several demurrers to the second, third, and fourth paragraphs of the answer, are assigned as error. Counsel for appellant in their able brief argue and contend for four propositions of law: First, "the custom and

usage of trade alleged, that goods were never received by defendant for any particular boat, but for the first boat to leave port, is such a custom as to modify the contract or bill of lading as to the particular conveyance to be used." Second, "The fact alleged that if the deviation had not occurred, the goods would have been destroyed by the same fire, notwithstanding, relieves defendant of liability as an insurer." Third, "The delivery by plaintiff's agent of the goods to Brashear, clerk of the steamer Carrollton, with a bill of lading, filled out by plaintiff's agent, in which was inserted the name of the steamer Sherley, was a rescission of that clause of the contract providing for carriage on the Sherley, and the making of a new contract to carry the goods on the Carrollton." Fourth, "The delivery of the goods by plaintiff's agent to the steamer Carrollton itself, with a bill of lading conditioned for the shipment of said goods on the steam boat Sherley, was a waiver of said condition on the part of plaintiff."

The execution of the bill of lading, made a part of the complaint, is admitted. Different definitions of the commercial instrument so called have been given by different courts, and jurists. As restricted to transportation by water, a bill of lading may be said to be a written acknowledgment, signed by the master of a vessel, that he has received the goods therein described from the shipper, to be transported on the terms therein expressed, to a described place or destination, and there to be delivered to the consignee or the parties therein designated. 4 Am. and Eng. Enc. of Law 509. By the terms of the contract under which appellants received the goods, it was agreed to transport them on the steamer Sherley. Evidence of the usage and custom of trade is admissible in mercantile contracts to prove that the words in which they are ex-

pressed in a particular trade to which the contract refers are used in a particular sense, and different from the sense that they ordinarily import, and in certain cases, for the purpose of annexing incidents to the contract in matters upon which the contract is silent; but it is never admitted to make a contract or to add a new element to the terms of the contract previously made by the parties. Usage may be admitted to explain what is ambiguous, but not to vary a contract which is plain. It can not control or vary the positive stipulations of the bill of lading. *The Delaware*, 14 Wall. 579; *Boon & Co.* v. *Steamboat Belfast*, 40 Ala. 184, and authorities there cited; *Benson* v. *Gray*, 154 Mass. 391, 28 N. E. 275.

In *Green, etc., Navigation Co.* v. *Marshall*, 48 Ind. 596, certain goods were shipped on the steamer Evansville, at Calhoun, Kentucky, to be delivered at Anderson Landing, in Tennessee. In answer to an action for the loss of goods, the defendant admits making the bill of lading; that she brought the goods to Evansville, Indiana, said steamer being employed in running between the city of Evansville, Indiana, and Bowling Green, Kentucky, and never going further down the Ohio river than Evansville, which was well known to the plaintiff at the time he shipped the goods, and plaintiff well knowing that said goods would be re-shipped at Evansville upon some other boat, to be carried to their destination. That the goods were re-shipped on board the staunch steamer Norman, to Anderson Landing in Tennessee; that she proceeded on her voyage, but, upon reaching her destination, was unable to find a consignee, and returned with said goods to Evansville, Indiana, and deposited them upon the wharf-boat until such time as the owner could be communicated with, and while there, the goods were destroyed by fire without the fault or negligence of

the defendant. To which answer a demurrer was sustained. The court says, page 598, "The appellant had no right to reship the goods on the steamer Norman without actual necessity required it. When a reshipment of goods is made by a common carrier without authority, and the goods are afterwards lost, even by the act of the state's enemies, he will not be excused from liability. * * * Neither the custom or usage of trade nor parol evidence will be allowed to vary a bill of lading in this respect. *Trott* v. *Wood*, 1 Gallis 443, and *May* v. *Babcock*, 4 Ohio, 334. And where reshipment is stipulated for in the bill of lading, it will not relax the liability of the common carrier for the non-delivery of the goods. *Little* v. *Semple*, 8 Mo. 99, and *Cassilay* v. *Young*, 4 B. Mon. 265. * * * And as the reshipment will not excuse the first carrier from liability, we are of the opinion that the second paragraph of the appellant's answer is insufficient. * * * Judgment affirmed."

The case of *Cox* v. *Foscue*, 37 Ala. 505, reported in 79 Am. Dec. 69, was an action by the appellee against the appellants as common carriers, to recover for the loss of two bales of cotton, shipped by plaintiff on board of defendants' steamboat Eliza Battle and never delivered at the port of destination. Defendants pleaded that the cotton was lost by "dangers of the river and by fire," within the meaning of an exception in the bill of lading. The Eliza Battle, on her voyage down the river, ran aground, and, in order to lighten her, plaintiff's cotton was put on another of defendants' boats. The Eliza Battle, after being thus lightened, continued down the river without taking back any part of her cargo. The boat to which the cotton was removed afterwards ran aground, and was lightened in like manner by transferring a part of her cargo to a third boat of defendants. This third boat

including plaintiff's cotton was afterwards destroyed by accidental fire. Each of the boats had competent officers and sufficient crew, and neither was overloaded. The cotton from the Eliza Battle could have been landed on the bank by putting out planks from the boat. The court, by A. J. Walker, C. J., says: "The contract of affreightment obliges the carrier, in the absence of a legal excuse, to carry the freight to the destined port in the very vessel stipulated in the bill of lading. It is a right resulting from the contract, that the transportation shall be in the chosen vessel. It is not permissible to speculate as to the reasonableness of the choice. The owner of the freight cannot be questioned as to his reasons. [Citing authorities.] A trans-shipment of the freight, without a legal excuse, however competent and safe the vessel into which the transfer is made, is a violation of the contract, an infringement of the rights of the freighter, and subjects the carrier to liability if the freight be lost. The trans-shipment, therefore, of the plaintiff's cotton, of itself rendered the carrier liable for the subsequent loss of the cotton, unless the act of trans-shipment was legally proper or excusable. * * * 'The master, in short, is, in such cases, to act reasonably and honestly, with a view to save the property and perform the voyage.' The mere stranding, of itself, does not necessarily produce a necessity for trans-shipment. Notwithstanding the stranding, it is the master's duty to get the vessel off, and prosecute the voyage, if he can do so; and no consideration of mere *convenience* to *him* would justify a *trans-shipment,* etc. Judgment affirmed."

The parties having agreed to ship on the steamer Sherley, they made their contract contrary to the alleged custom. Said steamer not being in port that day, appellant might have refused to receive them.

Not having exercised that right of refusal, it cannot now be heard to say that it did not receive them for shipment in said boat. *Hannibal R. R. Co.* v. *Swift*, 12 Wall. 262. The reception of the goods upon the steamer Carrollton, not from necessity, but from convenience, was a violation of the contract. It undertook to forward them upon a conveyance different from the one expressly agreed upon, and thus became an insurer of the goods, and cannot avail itself of the exception made in its behalf in the contract. *Robinson* v. *Despatch Trans. Co.*, 45 Ia. 470; *Galveston R., W. Co.* v. *Allison*, 59 Tex. 193; *Fatman* v. *Cincinnati R. R. Co.*, 2 Disney 248. The act of placing said goods on the steamer Carrollton without authority and without necessity was equivalent to a reshipment. *Green, etc., Navigation Co.* v. *Marshall, supra.* The fact that the Carrollton left the port of Cincinnati on the day the goods were received, did not justify the placing of them upon that boat, for appellee had specifically contracted for their transportation on the Sherley. He could not complain if the goods were not delivered upon another boat.

The averment that the goods would have been destroyed if left on the wharf-boat because that part of the wharf-boat where they would have been stored was destroyed by the same fire that destroyed the steamer Carrollton, is a conclusion and does not make the averment good. It states no fact showing a necessity for storing them in that part of the boat, nor any facts to show that they might not have been removed before reached by the fire. A deviation from the voyage renders the carrier responsible for all losses even from unavoidable casualty; for under such circumstances the loss is traced back through all the intermediate causes to the departure from duty. *Crosby* v. *Fitch*, 12 Conn. 410; *Hand* v. *Baynes*, 4 Whart. 204;

*Powers* v. *Davenport,* 7 Blackf. 497, 43 Am. Dec. 100; Story on Bailments, section 509; *Maghee* v. *Camden, etc., Co.,* 45 N. Y. 514; *Hastings* v. *Pepper,* 11 Pick. 41.

The third proposition for which appellant's counsel contend, is that the delivery by plaintiff's agent of the goods to Brashear, clerk of the steamer Carrollton, with a bill of lading filled out by appellee's agent in which was inserted the name of the steamer Sherley, was a rescission of that clause of the contract providing for carriage by the Sherley and the making of a new contract for carriage by the Carrollton. There is no averment in this paragraph that Brashear was not the agent of the defendant company to receive goods for the steamer Sherley. It does not meet the allegations of the complaint that the goods were received by the clerk of the defendant company to be carried by the steamer Sherley. It should have contained these averments. The answer was defective upon this if not upon other grounds.

The fourth paragraph of answer presents the question of waiver, involved in the fourth proposition laid down by appellee's counsel. This paragraph contains the averment that appellee's agent delivered the goods to the steamer Carrollton with a bill of lading conditioned for their shipment on the steamer Sherley. Counsel for appellant contends that by this act of appellee's agent, the condition of carriage by the steamer Sherley was waived. It is also alleged in said paragraph that appellee instructed his agent at Cincinnati to ship the lead by the Sherley; that said agent delivered it with a bill of lading for said steamer to the Carrollton. It avers that the steamer Carrollton received it and placed it on board of said steamer Carrollton—received said bill of lading, made a copy of the same and delivered said copy to plaintiff's agent. It thus appears from this paragraph that

with this knowledge, without any mistake, appellant company agreed to transport the goods by one vessel and received and placed them upon another. It does not deny that the defendant company "by its clerks, agent," etc., as alleged in the complaint executed their contract in writing to carry said lead on the steamer Sherley. It substantially admits the averments of the complaint. The facts set out fail to show a waiver or estoppel. To hold this paragraph good, would be to disregard the rule that a written contract may be waived by parol evidence.

The demurrer was properly sustained. While reported cases differ as to what facts under given circumstances constitute a deviation, the rule, we think, must be accepted as established by the great weight of authorities that the written contract for carriage is not subject to modification or variance by the custom or usage of trade. We cite as instructive upon this proposition, in addition to cases heretofore referred to, *Van Camp Packing Co.* v. *Hartman*, 126 Ind. 177; *Scott* v. *Hartley*, 126 Ind. 239; *Brown* v. *Foster*, 113 Mass. 136.

We would not be understood as deciding that a shipper not prejudiced by a deviation would be entitled to recover for such deviation. If in the case before us it should appear that the loss must certainly have occurred from the same cause without fault of defendant corporation if there had been no deviation from the contract, then the carrier should be excused. The burden of proving this fact would be upon the carrier. In reference to this defense which is attempted to be set up, we simply hold that the allegations do not make this showing; that the allegations amount only to a conclusion, and do not state facts from which the court can determine that the result would certainly have been the same   There is no error.   Affirmed.