CASE 64.—AUTION BY JOHN STAMBAUGH AND ANOTHER,
AGAINST THE CUMBERLAND PIPE LINE COM-
PANY.—March 8, 1910.

## Cumberland Pipe Line Co. v. Stambaugh, &c.

Appeal from Johnson Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—
Affirmed.

1.  Navigable Waters—Obstruction in Stream.—Where defendant
    constructed a pipe line across a navigable creek, it owed a
    duty to all having a right to use the stream for floatage not
    to locate the pipe so as to obstruct the creek.
2.  Navigable Waters—Obstruction of Stream—Floatage—Delay
    —Loss—Act of God.—Plaintiffs were engaged in floating
    cross-ties down a navigable creek, at the mouth of which
    they expected to raft them and float them down a river
    to market.  Defendant had constructed a pipe line over the
    creek so as to obstruct the ties, resulting in such delay that
    the rafts were caught by a sudden flood in the river before
    they could reach market, and were lost.  Held, that the de-
    lay caused by the obstruction in the creek was the proxi-
    mate cause of the loss, for which defendant was liable.
3.  Trial—Instructions—Question of Law.—An instruction that,
    unless the jury believed from the evidence that it was de-
    fendant's duty to keep its pipe line in such a condition that
    it was not an obstruction to the creek in question to float
    railroad ties out of it, they should find for defendant, was
    properly refused, as presenting a question of law.

D. D. SUBLETT for appellant.

VAUGHAN, HOWES & HOWES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER.—Affirming.

In the years 1907 and 1908 appellees, John Stambaugh and E. L. Preston, partners trading and doing business under the firm name of E. L. Preston & Co., were engaged in running and floating cross-ties down Toms creek, a navigable stream in Johnson county, Ky. Charging that appellant unlawfully obstructed Toms creek by constructing its pipe line across same, and that by reason thereof they lost about 1,600 cross-ties, appellees instituted this action against appellant to recover damages in the sum of $1,053.80. The jury returned a verdict in their favor for $898. From the judgment based thereon this appeal is prosecuted.

The evidence upon which the case was submitted to the jury is as follows: Toms creek in Johnson county, Ky., is a navigable stream. Appellant's pipe line crossed that stream in three places. The appellees were proceeding down the creek with some 2,500 cross-ties which they proposed to float to the mouth of the creek, and then raft down the Big Sandy river to market. When the ties reached appellant's pipe line, they lodged against it. Appellees were compelled to employ several men to assist in getting the ties over the obstruction. They succeeded in getting only about 1,800 ties over the same. In doing this they were delayed on their journey 1½ days. As soon as they got their ties over the pipe line and to the mouth of the creek, which was only about a half mile below the pipe line, they distributed their ties in two rafts and started down the Big Sandy river to market. When they got to a point about eight miles this side of the market to which they were bound, there came a sudden tide in the Big Sandy river, and, in spite of all their efforts to save same, one of said rafts, containing 910 cross-ties, was

vol. 137—34

swept away and lost. The 700 ties which they were unable to get across the pipe line were also swept away by the flood, and all of them lost. Had it not been for the delay occasioned by the obstruction of the ties by the pipe line, appellees would have gotten their ties to market before the rise in the river, and thy would not have been lost. The pipe line was located several inches from the bottom of the creek and was in such position that during an ordinary tide ties would lodge against it. The evidence for appellant was to the effect that the pipe line was sunk below the bottom of the creek, and was not in position to obstruct the ties. Appellant's objections to the petition and amended petition are highly technical. Considered together, the petition and amended petition sufficiently alleged facts going to show that appellant's pipe line was several inches from the bottom of Toms creek, and obstructed navigation in that stream. It was not necessary to allege that appellant owed appellees any duty. Appellant did owe the duty to all who had the right to use the stream not to locate its pipe line at such a place as to amount to an obstruction of the creek.

Some point is made of the fact that appellees testified that they had to expend $120 for the purpose of getting hands to assist them in moving the ties over the obstruction, and that their own statements tended to refute this evidence. That may be true, but the jury did not allow them the full amount sued for, and the difference between the sum prayed for and that awarded them will account for this item. If appellees were entitled to recover at all, they were entitled to the market value of the ties at the time they were destroyed. Upon this point we cannot say that the verdict is flagrantly against the evidence.

The only question in this case is whether or not appellant was entitled to a peremptory instruction. It may be conceded that the authorities are in conflict. The question has arisen most frequently in cases involving the liability of common carriers. Where there is an unnecessary delay on the part of the carrier, followed by an act of God which results in the destruction of the goods, some of the cases hold that the carrier is not responsible, while other cases hold the carrier liable for loss by an act of God to which the goods would not have been subjected had the delay not occurred. Thus in the case of Green-Wheeler Shoe Co. v. Chicago, etc., R. Co., 130 Iowa, 123, 106 N. W. 498, 5 L. R. A. (N. S.) 882, the carrier was held responsible for the destruction of goods by flood where but for its negligent delay the goods would not have been caught in the flood or damaged thereby. The court reviewed the cases, recognized the conflict of authorities, and then based its decision upon the ground, first, that the peril of accidental destruction is enhanced by the negligent extension of time during which the goods must remain in the carrier's control and during which some casualty may overtake them; and, second, that in tort actions recovery is not limited to the consequences within the contemplation of the parties as in contract, but includes all the consequences resulting by ordinary and natural sequence. The court, therefore, held that, while the carrier could not have foreseen the particular casualty which destroyed the goods, yet the delay did subject the goods to danger, and but for it they would not have been destroyed. The latter view is the one that has been adopted by this court. Thus in the case of Sutton v. Western Union Telegraph Co., 129 Ky. 166, 110 S. W. 874, 33 Ky. Law Rep.

577, it was held that the negligence of the telegraph
company in failing to deliver within a reasonable time
a telegram, informing the addressee of his mother's
death, whereby he missed two trains by which  he
might have gotten to his dead mother in time for the
funeral, was the proximate cause of his failure to
arrive in time therefor, though, after the telegram
was finally delivered, he did get a train which or-
dinarily would have brought him in time for the fun-
eral, but which by reason of a slip in the earth ahead
of the train was delayed in its progress, so that he
was unable to get there, where the slip in the earth
occurred after the two trains which he could other-
wise have taken had passed.

In the case of Cassilay, etc., v. Young, etc., 4 B.
Mon. 265, 39 Am. Dec. 505 Cassilay and others agreed
to deliver a cargo of goods in Vicksburg without de-
lay.   For some reason, satisfactory to themselves,
they stopped the cargo, and tied it up to the bank of
the river at Vicksburg.  A storm arose which caused
the cargo to sink, and an action was brought for the
recovery of the value of it.  Judgment  was  given
against them.   The court said: "By reason of the
disregard of their duty and of their conduct, we are
of the opinion that they are liable for the loss."  In
the case of Louisville & Nashville R. R. Co. v. Brown-
lee, 14 Bush, 590, appellee delivered several hogs-
heads of tobacco at appellant's depot in Rowlett's
station, to  be  carried  by  it  to  market. The  to-
bacco was destroyed by fire.  The proof showed
that,  if  appellant's  agent  had   exercised  ordi-
nary  care, he  could  have  shipped several  of the
hogsheads before the fire.  This court said: "If the
appellant could, by the exercise of ordinary diligence,
and in the regular course of its freight business, have

shipped the tobacco before its consumption by the fire, it is responsible for its failure to do so." In the case of Hernsheim Bros. & Co. v. Newport News & Mississippi Valley Co., 35 S. W. 1115, 18 Ky. Law Rep. 227, appellants delivered to appellee 35 hogsheads of tobacco for shipment. In the petition it was alleged that the railroad company carelessly and negligently failed to ship the 35 hogsheads of tobacco within a reasonable time; that, by the use of ordinary diligence, appellee could have shipped all of said tobacco before its destruction by the fire on October 8, 1891. The court said: "It seems to us that the allegations of the petition clearly show that the loss was the direct result of the negligence and carelessness of appellee. If appellee had shipped the tobacco immediately as it agreed to do, the loss by the fire could not have occurred, and, as they had taken it into custody and agreed to immediately ship the same and could have done so, it seems to us that appellee is liable for the damages sustained by the appellants." In the case of Plotz v. Miller, 51 S. W. 176, 21 Ky. Law Rep. 257, Plotz, who was a common carrier on the Ohio and Salt rivers, agreed for the consideration of $50, to convey a barge to Clark's landing on Salt river, and transport a barge load cf lumber for Miller from that place to Louisville. Plotz failed to bring said barge to said landing within a reasonable time, or to transport said lumber to Louisville within a reasonable time, and the lumber was destroyed. In affirming a judgment below in favor of Miller, this court held that the failure of Plotz to comply with his contract was the proximate cause of the loss of the lumber.

The case under consideration does not differ in principle from those above referred to. The delay

here was caused by the obstruction of a navigable stream which appellees had the right to use for the purpose of transporting their ties to market. Had it not been for the delay thus occasioned, appellees would have gotten their ties to market before the rise in the river. Thus appellant's unlawful act subjected appellees' ties to a danger to which they would not have been subjected had it not been for such act. That being the case, appellant is liable, and the court did not err in refusing a peremptory instruction in its favor.

No complaint is made of the instructions. Indeed, none could be made, for they aptly presented to the jury all the issues involved.

The court did not err in refusing to give the following instruction to the jury: "The court instructs the jury that, unless they believe from the evidence that it was the duty of the defendant to keep its pipe line in such a condition that it was not an obstruction to the navigation of Toms creek to float railroad cross-ties out of it, they will find for the defendant." This instruction presents simply a question of law. Questions of law are for the court, and not for the jury. It was the duty of appellant not to obstruct the navigation of Toms creek, and the court necessarily determined this point in favor of appellees when it submitted the case to the jury.

Perceiving no error in the record prejudicial to the substantial rights of appellant, the judgment is affirmed.